IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| E.S., as custodian and next friend of her minor child, K.B., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 1:11-CV-362-WKW [WO] |
| DALEVILLE CITY BOARD OF EDUCATION, *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

ES, proceeding under pseudonym, brings this action on behalf of her daughter, KB, who was an eighth grader at Daleville Middle School. Her sole remaining claim against Defendant Daleville City Board of Education (the "School Board") is for Title IX gender discrimination. The School Board moved for summary judgment. (Doc. # 34.) ES responded in opposition (Doc. # 36), and the School Board replied (Doc. # 40). The motion has been fully briefed and is ready for resolution. For the reasons that follow, the School Board's motion for summary judgment is due to be granted.

**I. JURISDICTION AND VENUE**

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. § 1331. The parties do not contest personal jurisdiction or venue, and the court finds that there are allegations sufficient to support both.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

On Thursday, December 10, 2009, KB was an eighth-grade student at Daleville Middle School.  That day at lunch, a janitor named Allen Moody inappropriately touched KB as she walked away from the cafeteria.[1]  She was only fifteen years old.

After lunch, KB told her teacher what happened in the cafeteria.  Her teacher told her to report Mr. Moody's behavior to the assistant principal, but KB wanted to speak with her mother first.  Instead, KB's teacher reported the incident to the assistant principal directly, who notified Mike McDuffie, the School Principal.

Upon learning of the incident, Principal McDuffie spoke with KB about what had happened.  Immediately afterward, Principal McDuffie called Mr. Moody to his office and asked for an explanation.  Mr. Moody admitted that he may have accidentally bumped into KB.  Principal McDuffie ordered Mr. Moody to stay out of the cafeteria during KB's lunch period and to avoid her in the halls.  After speaking with Mr. Moody, Principal McDuffie called Superintendent Andrew Kelley to inform him of the situation.  Principal McDuffie was instructed to investigate the matter further and keep Superintendent Kelly posted on any developments.

---

[1] Plaintiff's counsel describes the event as follows:  "The Board has admitted that Moody sexually harassment [*sic*] KB by putting his hand onto her buttocks per the school's sex harassment policy."  (Pl.'s Summ. J. Resp. 14 (Doc. # 14).)  For the purpose of summary judgment, it is indeed undisputed that the touching occurred.  But nothing in the evidence (or the court's own experiences in school, for that matter) suggests it happened "per the school's sex harassment policy."

The following Tuesday, Principal McDuffie met with ES, KB's mother. In that meeting, Principal McDuffie explained his response to the incident. Afterward, Principal McDuffie tried several times (without success) to call ES to discuss filing a complaint form, which by policy had to be completed by a parent. On December 18, 2009, the first day of Christmas break, Principal McDuffie went to KB's house and gave the complaint form to ES in person.

On January 5, 2010, the first day back after the holiday, Principal McDuffie discovered Mr. Moody had ignored his instructions and been present in the cafeteria during KB's lunch period. Principal McDuffie confronted Mr. Moody again, and for reasons that remain unclear, Mr. Moody confessed that a school employee had once accused him of sexual harassment.

ES finally came to Principal McDuffie's office to fill out a complaint form on January 8. While she was there, ES informed Principal McDuffie that she intended to file a report with the police. Mr. Moody was arrested on January 11, 2010, and Superintendent Kelley initiated termination proceedings that same day. On February 3, the School Board approved Superintendent Kelley's recommendation.

On May 11, 2011, ES filed this suit against Mr. Moody and the School Board. It appears Mr. Moody has not been served, and the School Board now moves for summary judgment.

### III.  STANDARD OF REVIEW

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Under Rule 56, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing there is no genuine issue of material fact, or by showing that the nonmovant has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-24.  "[T]he court must view all evidence and make all reasonable inferences in favor of the [nonmovant]" *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

Once the moving party has met its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Rule 56(e)(2).  To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A genuine factual dispute exists if "a reasonable jury could return a verdict

for the non-moving party." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (internal quotation marks and citation omitted).

## IV.  DISCUSSION

Title IX is a federal statute prohibiting gender discrimination in educational programs and activities.  *See* 20 U.S.C. § 1681(a).  To enforce Title IX's mandates, an implied private right of action allows individuals to obtain monetary damages for violations.  *Williams v. Bd. of Regents*, 477 F.3d 1282, 1293 (11th Cir. 2007). Under Title IX, "sexual harassment is discrimination in the school context."  *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 650 (1999) (internal quotation marks omitted).

A school district is not liable for damages under a Title IX implied right of action for the sexual harassment of a student by one of its teachers "unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct."  *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998).  Although Mr. Moody is not a teacher, no authority has been presented that suggests a different analysis should control in this case.  As a result, the court will apply the standards that have been developed to address teacher misconduct.

5

A.     **<u>ES has submitted insufficient evidence of actual notice.</u>**

To prove the School Board had actual notice of Mr. Moody's misbehavior, ES argues that the School Board had notice that (1) Mr. Moody had looked at students as though he were undressing them with his eyes, (2) that two teachers had complained that Mr. Moody had touched them inappropriately, and (3) that Principal McDuffie's secretary did not like the way Mr. Moody looked at her. The parties dispute who had notice of these incidents, and when. On summary judgment the court will resolve those disputes in ES's favor and assume that the School Board had notice of each of these events when the KB incident occurred.

But even assuming the School Board was on notice of the prior complaints against Mr. Moody, that does not amount to actual notice Mr. Moody might harass a student. With one exception, all of Mr. Moody's prior incidents of harassment were directed at other employees, not students. While such a history, if proven, could suggest Mr. Moody might harass an adult coworker, ES has not explained why it should have put the School Board on notice that Mr. Moody was a danger to *students*. Accordingly, Mr. Moody's history of harassing coworkers is insufficient to meet the actual-notice requirement of ES's Title IX claim. *See Hackett v. Fulton Cnty. Sch. Dist.*, 238 F. Supp. 2d 1330, 1349–50 (N.D. Ga. 2002) ("[A] teacher's harassment of another teacher can not be considered sufficient to put the principal on notice that the

teacher may be committing sexual misconduct against *students*." (emphasis in original)).

But ES's claim might still survive summary judgment if other events from Mr. Moody's history gave the School Board actual notice he was a danger to students. To that end, ES argues that Principal McDuffie received complaints in 2008 of "'undressing' type 'looks'" by female students. The School Board contends that no such complaints were made until *after* the incident involving KB. There is no need, however, to resolve that dispute here. Even assuming the School Board had prior notice that some students did not like the way Mr. Moody looked at them, such conduct is "sufficiently minimal and far afield from the conduct underlying [ES's] Title IX claim that [it] would not alert a school district official of the risk of . . . sexual harassment." *Doe v. Sch. Bd.*, 604 F.3d 1248, 1258 (11th Cir. 2010). The Eleventh Circuit Court of Appeals has suggested that "incidental touching or mere inappropriate comments" do not meet the actual-notice requirement, *id.*, and the Supreme Court of the United States has held that sexually suggestive comments are "plainly insufficient," *Gebser*, 524 U.S. at 291. If incidental touching and suggestive comments are insufficient to meet the actual-notice requirement in a Title IX action, then ES must present evidence that Mr. Moody did more than look at students wrong to prove actual notice. That she has not done.

**B.     ES has presented insufficient evidence of deliberate indifference.**

Without evidence that the School Board had actual notice of Mr. Moody's misconduct, ES's claim must fail as a matter of law.  At the very least, however, it is undisputed that the School Board had actual notice of at least one incident when Mr. Moody harassed a student: *viz.*, his encounter with KB.  Assuming that this "single complaint of a targeted incident against a student," *Doe*, 604 F.3d at 1258, is sufficient to meet the actual-notice requirement of ES's Title IX claim, she might yet defeat summary judgment if she presents evidence indicating the School Board's reaction was "deliberately indifferent."  *Gebser*, 524 U.S. at 277.

As the Eleventh Circuit has held, "[d]eliberate indifference is an exacting standard."  *Doe*, 604 F.3d at 1259.  To succeed, ES must do more than show the School Board's response was "ineffective," *Sauls v. Pierce Cnty. Sch. Dist.*, 399 F.3d 1279, 1285 (11th Cir. 2005).  Instead, to succeed on her claim, ES must show the School Board's response to Mr. Moody's behavior was "clearly unreasonable in light of the known circumstances."  *Doe*, 604 F.3d at 1259.

The undisputed evidence shows the response to the incident with KB was swift and effective.  Immediately after speaking with KB about the incident, Principal McDuffie banned Mr. Moody from going anywhere near KB while he investigated the allegations.  Less than a week after Principal McDuffie received notice that Mr.

8

Moody had ignored his instructions and been present in the cafeteria during KB's lunch period, Superintendent Kelly recommended Mr. Moody's termination to the School Board. On February 3, 2010 – less than two months after the incident (including the Christmas holiday) – the School Board terminated Mr. Moody's employment. While investigating KB's claim, Principal McDuffie took the time to drive to ES's house on his day off to get the formal complaint paperwork taken care of. And perhaps most importantly, the evidence indicates that after Principal McDuffie took action, the harassment ceased. Nothing in these facts suggests deliberate indifference to KB's harassment, and ES has presented no authority compelling such a conclusion.

## V.  CONCLUSION

Based on the foregoing, it is ORDERED that Defendant's motion for summary judgment (Doc. # 34) is GRANTED.

DONE this 25th day of September, 2012.

                                      /s/ W. Keith Watkins
                              CHIEF UNITED STATES DISTRICT JUDGE